## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-23174-Civ-WILLIAMS/TORRES

JILL THAYER,

       Plaintiff,

v.

NCL (BAHAMAS) LTD., d/b/a
NORWEGIAN CRUISE LINE,
DESTINATIONS NORTH AMERICA, LLC
and XYZ CORPORATION(S),

       Defendants.

_____/

## OMNIBUS REPORT & RECOMMENDATION ON DEFENDANTS'
## MOTIONS TO DISMISS

       This matter is before the Court on Destinations North America, LLC's ("DNA")

motion to dismiss [D.E. 14] and NCL (Bahamas) Ltd.'s, d/b/a Norwegian Cruise Line,

("NCL," and together with DNA, "Defendants") motion to dismiss [D.E. 19] Jill

Thayer's ("Plaintiff") amended complaint [D.E. 9].  Plaintiff responded to DNA's

motion on September 14, 2020 [D.E. 16] to which DNA replied on September 18, 2020

[D.E. 18].  Plaintiff responded to NCL's motion on October 15, 2020 [D.E. 24] to which

NCL replied on October 22, 2020 [D.E. 25].  The Honorable Judge Kathleen M.

Williams referred DNA's motion and NCL's motion to the undersigned Magistrate

Judge respectively on September 17, 2020 and October 8, 2020.  [D.E. 17, 20].

Therefore, the matter is now fully briefed and ripe for disposition.  After careful

consideration of the motions, responses, replies, relevant authority, and for the reasons discussed below, DNA's [D.E. 14] motion to dismiss should be **GRANTED in part** and **DENIED in part** and NCL's [D.E. 19] motion to dismiss should be **DENIED**.

## I.     FACTUAL BACKGROUND

Plaintiff filed this action on July 31, 2020 [D.E. 1] after she sustained injuries while on a voyage of the NCL *Escape* and participating in a shore excursion on September 25, 2019.  Plaintiff filed an amended complaint on August 6, 2020.  [D.E. 9].   The shore excursion was operated by DNA and XYZ Corporation(s) (the "Excursion Entities") and sold through NCL.  The shore excursion included a scenic walk around Cadillac Mountain within Acadia National Park in Bar Harbor, Maine. Once she arrived at the mountain by bus, a tour guide directed Plaintiff to walk on what he described as a "nature path."  Plaintiff alleges that the nature path "had conditions that were rougher, looser, and more slippery than Plaintiff was led to expect from the 'Easy Activity Level' assigned to the excursion (which was difficult for Plaintiff particularly in light of her disability." *Id.*

While walking on the nature path, Plaintiff "stepped onto looser gravel that moved from underneath her, causing her to lose her balance and then slip on a moss-covered and/or wet boulder," resulting in her falling "off the side of the mountain." *Id.*  The fall resulted in severe injuries including multiple ankle fractures.  Prior to her fall, Plaintiff alleges she had only encountered hard track gravel and that she was not aware of the looser gravel before stepping on it.  Plaintiff alleges that she

only chose the shore excursion because it was advertised as an "Easy Activity Level" excursion.  She alleges the excursion was instead dangerous due to the path's conditions and lack of adequate railing.  *Id.*  Plaintiff also asserts that she was not informed about wearing safe footwear nor provided any safety briefing or warnings about the less than easy conditions.

Plaintiff's amended complaint alleges the following nine causes of action arising from her injuries: (1) negligence against the Excursion Entities; (2) misleading advertising in violation of Florida Statute Section 817.41 against NCL; (3) negligent misrepresentation against NCL; (4) negligent selection and/or retention against NCL; (5) negligent failure to warn against NCL; (6) negligence against Defendants based on apparent agency or agency by estoppel; (7) negligence against Defendants based on a joint venture between NCL and the Excursion Entities; and (8) third-party beneficiary against the Excursion Entities.

## II.    *LEGAL STANDARD*

In ruling on a defendant's motion to dismiss, a court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiff[ ]."  *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)).  "When considering a motion to dismiss, all facts set forth in [a plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [a plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

Additionally, where a cause of action sounds in fraud, Federal Rule of Civil Procedure 9(b) must be satisfied to the more relaxed standard of Rule 8. *See U.S. ex. rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002); *Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431, at *3 (S.D. Fla. June 5, 2012). Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice,

intent, knowledge, and other conditions of a person's mind shall be averred generally." Fed. R. Civ. P. 9(b).  Rule 9(b) is satisfied if a plaintiff pleads:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

### III.    ANALYSIS

#### A.    *Count I – Negligence Against the Excursion Entities*

We first address Plaintiff's general negligence claim against the Excursion Entities.  "In a claim based on an alleged tort occurring at an offshore location during the course of a cruise, federal maritime law applies, just as it would for torts occurring on ships sailing in navigable waters." *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1392 (S.D. Fla. 2014).  To state a negligence claim under federal maritime law, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

In maritime cases, the appropriate duty of care is reasonable care under the circumstances. *See Fischer v. S/Y Neraida*, 508 F.3d 586, 594-595 (11th Cir. 2007). To demonstrate a breach of this duty, a plaintiff must prove that: (1) a dangerous condition existed that caused the claimed injury; and (2) a defendant had actual or

constructive notice of the dangerous condition.  *Adams v. Carnival Corp.*, 2009 WL 4907547, at *3 (S.D. Fla. Sept. 29, 2009) (citing *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65-66 (11th Cir. 1988)); *see also Keefe*, 867 F.2d at 1322.   The duty to warn only extends to dangers "which the carrier knows, or reasonably should have known" to exist.  *Wolf v. Celebrity Cruises Inc.*, 683 F. App'x 786, 794 (11th Cir. 2017). In other words, if a defendant does not have actual notice of a hazardous condition, it can assume a duty of reasonable care through constructive notice when a dangerous condition exists for an interval of time sufficient to allow for corrective action.  *See id.* "Regardless of notice, however, there is no duty to warn of dangers that are open and obvious."  *Plott v. NCL Am., LLC*, 786 F. App'x 199, 202 (11th Cir. 2019).

### 1.   *Plaintiff has Established that DNA had Notice of the Dangerous Condition*

DNA first argues that Plaintiff has failed to plead sufficient factual allegations to establish that it had notice of the dangerous condition that led to Plaintiff's injury. To establish that DNA had notice, Plaintiff alleges that DNA was or should have been on notice that the shore excursion was dangerous.  For instance, Plaintiff alleges that DNA had knowledge of specific online reviews from the websites alltrails.com and tripadvisor.com where previous passengers of NCL complained about the "subject excursion" being dangerous directly to DNA and NCL ("Third-Party Complaints"). [D.E. 9, ¶ 29].   Further, Plaintiff alleges that DNA and NCL were made aware "through other complaints, comments, and/or reviews about the dangers of the subject excursion . . .".  *Id.*  On top of these allegations, Plaintiff alleges that DNA:

knew or should have known of these dangers and/or issues as complaints, comments, and/or other reviews were either posted on websites that it either reviewed or should have reviewed prior to Plaintiff's incident, and/or other sources it either reviewed, should have reviewed, and/or otherwise been aware of prior to Plaintiff's incident. Upon information and belief, Defendants review the websites on which these reviews/comments were posted, are required to review these websites as a part of their policies, procedures, agreements, and/or recommended/other practices, and/or are required to respond to reviews/comments on these websites, and/or are otherwise required or recommended to be aware of and/or take seriously the reviews/comments on these websites. In addition, upon information and belief, the Excursion Entities are required to make NCL aware of these reviews/comments on these websites and/or any safety concerns expressed on any of these or other online reviews/comments. In addition, before Plaintiff's incident, NCL was or should have been on notice that the subject excursion was dangerous and/or risk creating due to other cruise ship passengers being injured on similar excursions.

[D.E. 9, ¶ 30].

DNA asserts that the allegations fail to establish that any of the Third-Party Complaints refer to the subject shore excursion. This argument, however, ignores that the amended complaint specifically alleges that "some of the [Third-Party Complaints], include, but are not limited to, previous passengers complaining and/or commenting about the following directly to Defendants *regarding the subject excursion* the all the other allegations besides these specific comments." [D.E, ¶ 29] [emphasis added]. We note that Plaintiff's initial complaint lacked this key emphasized language, but DNA cannot ignore it now. Through discovery, DNA may show that the Third-Party Complaints are not related to the subject excursion, but at the motion to dismiss stage, we must treat all well-pled allegations as true. *See Ashcroft*,

556 U.S. at 678; *Rivell*, 520 F.3d at 1309.[1]  Plaintiff has thus pled sufficient facts that establish DNA had actual notice of the dangerous condition.

### 2. *Plaintiff has Established that it is Plausible the Dangerous Condition was not Open and Obvious*

DNA next contends the alleged dangerous condition that caused the injury, looser gravel and a slippery moss/covered and/or wet boulder, is open and obvious as a matter of law.  According to DNA, Count I must therefore be dismissed.  Admittedly if the dangerous condition here was open and obvious, DNA would not be liable for a failure to warn because the "open and obvious nature of a dangerous condition negates liability for failure to warn."  *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1267 (11th Cir. 2020); *see also Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1333 (S.D. Fla. 2019), *report and recommendation adopted*, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) ("even if a danger is open and obvious, this is still not a total bar to recovery . . . the person may still recover damages under the principles of comparative negligence if the elements of the tort have been proven."). Yet, for a negligent-maintenance claim, DNA "may still be liable for maintaining a dangerous condition even if the danger was obvious." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020); *see also Carroll*, 955 F.3d at 1268 (adopting Section 51 comment K from the Third Restatement of Torts that "treats the open and obvious nature of a

---

[1]     DNA also contends that it has no duty to review complaints posted on third-party websites.  However, this is irrelevant to the issue of notice because Plaintiff has alleged that DNA had actual notice of the Third-Party Complaints.

dangerous condition as a factor to be considered in a comparative fault analysis—not as a bar to liability for negligently maintaining premises.").

In this case, Plaintiff not only alleges that DNA failed to warn her of the dangerous condition, but DNA failed to maintain a safe shore excursion. Accordingly, even if the risk was open and obvious, that does not preclude DNA's entire negligence claim. *See Amy,* 961 F.3d at 1308. But we still determine if looser gravel and a slippery moss/covered and/or wet boulder on a "nature path" is an open and obvious danger in connection to DNA's alleged failure to warn.

"A dangerous condition is one that is not apparent and obvious . . . [t]he mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller v. NCL (Bah.) Ltd.*, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016), *aff'd*, 679 F. App'x 981 (11th Cir. 2017) (alteration added; citations omitted). In determining whether a danger is open and obvious, a court focuses on what an objectively reasonable person would observe and does not consider a plaintiff's subjective perceptions. *See Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018); *Malley v. Royal Caribbean Cruises Ltd*, 713 F. App'x 905, 908 (11th Cir. 2017).

In some rare cases, courts have dismissed negligence claims at the pleading stage when no further factual development could change the outcome of a danger being open and obvious. *See Kulakowski v. Royal Caribbean Cruises, Ltd.*, 2017 WL 237642, at *2 (S.D. Fla. Jan. 18, 2017) (dismissing negligence claim because it was open and obvious that a plaintiff might fall while ice skating due to a cruise ship

moving); *Hoard v. Carnival Corp.*, 2015 WL 1954055, at *2 (S.D. Fla. Apr. 17, 2015) (dismissing negligence claim when a plaintiff fell off a horse that stumbled on a rock during a shore excursion); *Lapidus v. NCL Am. LLC*, 924 F. Supp. 2d 1352, 1357 (S.D. Fla. 2013) (finding that a hike with visible very sharp terrain and steep steps was an open and obvious danger that could lead to over exertion).  However, rarely will a court determine that a danger is open and obvious at the motion to dismiss stage. *See, e.g., Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1309 (S.D. Fla. 2011) (citing a string of cases that resolved the issue at the motion for summary judgment stage).  This is because a court must only determine if a plaintiff has pled enough facts to establish that it is plausible the alleged danger was not open and obvious.  *See Twombly*, 550 U.S. at 570.

Here, Plaintiff has alleged that "[u]p until her fall, all of the gravel Plaintiff had encountered was hard tack gravel, however, when Plaintiff took a step from a standing position, *unbeknownst to her*, she stepped onto looser gravel that moved from underneath her . . ." [D.E. 9 ¶ 27] [emphasis added].  Viewing this allegation in the light most favorable to Plaintiff, as we must, this supports that it is plausible that a reasonable person in Plaintiff's circumstances would not have observed looser gravel before stepping on it.  *See Carroll*, 955 F.3d at 1263-65 (determining that a lounge chair placed on an open deck on a sunny day was not an open and obvious danger because the plaintiff stated that she was forced to walk behind her husband after passing the first lounge chair and he blocked her view of the second lounge chair that she tripped on); *Kennedy*, 385 F. Supp. 3d at 1333 (denying a motion to dismiss

a negligence claim because it was alleged the deceased passenger had a reasonable assumption that it was safe to jump off an inflatable water float even though the water was shallow).

DNA contends the facts here can be differentiated because the alleged dangerous condition was a naturally occurring geographic condition. *See, e.g., Lapidus*, 924 F. Supp. 2d at 1357. The Eleventh Circuit, however, has made no such distinction. And even if we assume that there is a different standard for natural dangers, Plaintiff has not alleged the hard track gravel path was a naturally occurring geographic condition—one guide calling it a "nature path" does not mean the path was not made and maintained by DNA. Drawing all inferences in favor of Plaintiff, we cannot find that the alleged dangerous condition was naturally occurring instead of manmade. DNA's motion to dismiss Count I should thus be **DENIED**.[2]

## B.    *Counts II and III – Misleading Advertising and Negligent Misrepresentation*

Next, Plaintiff alleges in Counts II and III that NCL made and disseminated misleading materials and made negligent misrepresentations regarding the shore excursion. Florida Statute Section 817.41 forbids misleading advertisements: "a particularized form of fraud." *Rollins, Inc. v. Butland,* 951 So. 2d 860, 877 (Fla. 2d

---

[2]    DNA also argues that Plaintiff has alleged certain breaches by DNA that are not cognizable claims under maritime law and should therefore be dismissed. Even though some of Plaintiff's allegations of breaches are less clear, they are all essentially rooted in showing that DNA either breached its duty of care or failed to warn of the alleged danger. They thus do not impose any heightened duties on DNA that are not recognized under maritime law. *See Celestino v. Royal Caribbean Cruises, Ltd.*, 2018 WL 6620114, at *3 (S.D. Fla. Oct. 15, 2018), *report and recommendation adopted sub nom. Celestino v. Royal Caribbean Cruise Lines, Ltd.*, 2018 WL 6620873 (S.D. Fla. Nov. 2, 2018).

DCA 2006). "[T]o maintain a civil action for violation of the statute [a plaintiff must] prove each of the elements of common law fraud in the inducement, including reliance and detriment, in order to recover damages." *Joseph v. Liberty Nat'l Bank,* 873 So. 2d 384, 388 (Fla. 5th DCA 2004).

Accordingly, claims arising under Florida Statute Section 817.41 and negligent misrepresentation must both allege:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1352-53 (S.D. Fla. 2016) (citing *Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)).

Both causes of action, as subsets of fraud, are subject to the heightened pleading standard of Rule 9(b). *See Gayou*, 2012 WL 2049431, at *7 (dismissing an allegation of misleading advertisement and negligent misrepresentation because the complaint was not temporally precise under Rule 9(b)); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) ("Rule 9(b)'s heightened pleading standard requires that the complaint set forth . . . precisely what statements were made in what documents or oral representations."). This requires a plaintiff to establish the 'who, what, when, where, and how' of the fraud." *Ceithaml*, 207 F. Supp. 3d at 1353 (citing *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006)).

In other words, when pleading a fraud claim, a cause of action must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016) (citing *Garfield*, 466 F.3d at 1262).[3]

Here, Plaintiff's allegations regarding NCL' statements fall into two general buckets: (1) NCL referred to the shore excursion in proprietary language as if it was an NCL excursion and (2) described the excursion as an "Easy Activity Level" excursion. Plaintiff contends these were misrepresentations and misled Plaintiff because, respectively, (1) NCL now argues the shore excursion was provided by DNA, and (2) the excursion was not "easy." NCL first argues the misleading advertisements claim must be dismissed because Plaintiff failed to plead that she was within the state of Florida when she read the allegedly misleading advertisements as required

---

[3]     Courts have applied Rule 9(b) to a wide-range of fraud claims, whether the allegations stem from fraudulent concealment, common law fraud, or a variation thereof. *See, e.g.*, *Hendley v. Am. Nat'l Fire Ins. Co.*, 842 F.2d 267, 269 (11th Cir. 1988) (concluding that Rule 9(b) was not satisfied when plaintiff "steadfastly refused to offer specifics" and "never earmarked any facts as demonstrative of fraud"); *Friedlander v. Nims,* 755 F.2d 810, 813-14 (11th Cir. 1985) (concluding that although a Rule 9(b) dismissal is a "severe sanction," plaintiff's decision to ignore the court's "sound and proper" recommendations about how to correct the pleading deficiencies concerning the scope of an employee's authority warranted dismissal); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970-71 (5th Cir. 1981) (affirming Rule 9(b) dismissal because "the complaint includes only conclusory allegations of fraudulent concealment").

by Fla. Stat. §817.41(1).  On the other hand, Plaintiff argues the statute simply applies when one disseminates misleading advertisements to the general public of Florida and thus it is not relevant where the affected person is physically located when reading the advertisement.  Further, even if the statute required a person to read the misleading advertisement while in Florida, Plaintiff contends that the Court can infer Plaintiff read the advertisement in Florida because she is a citizen of Florida.

Florida Statute Section 817.41(1) states, in part, "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of [Florida] . . . any misleading advertisement."  Based on the plain language of the statute, we agree with Plaintiff.  There is no requirement that a person read a misleading advertisement while in Florida, and the statute is applicable here because Plaintiff alleges NCL disseminated the misleading advertisements to the people of Florida.  Thus, it is irrelevant if Plaintiff was in Florida when she read the advertisement.

NCL next argues that Plaintiff fails to allege any facts that show the alleged misrepresentations are indeed false or that NCL had knowledge of their falsehood.  This argument is unavailing because Plaintiff alleges specific facts how the statements are false.  For instance, Plaintiff alleges: (1) the exact statements that are alleged to be misleading or false; (2) the sources of the allegedly misleading materials; (3) where and when the allegedly misleading or false statements were made; (4) and how the statements are false and misleading.  Indeed, the allegations provide NCL

with the respective sources of the representations and facts supporting Plaintiff's claims that misrepresentations and misleading advertisements were made to her. *See Doria v. Royal Caribbean Cruises, Ltd.*, 393 F. Supp. 3d 1141, 1145 (S.D. Fla. 2019) (denying motion to dismiss negligent misrepresentation claim with similar allegations).

For NCL's alleged statements that suggest the shore excursion is an NCL excursion, NCL argues that Plaintiff could not have reasonably relied on any of the statements because the NCL passenger ticket contract and NCL's website indicate that shore excursions are operated by independent contractors. These disclaimers alone, however, are not enough because an entity is not an "independent contractor" just because that is what someone calls it. *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1237-38 (11th Cir. 2014) (declining to determine, at the motion to dismiss stage, if an onboard doctor was an independent contractor when the passenger ticket stated that medical personnel were independent contractors) (citing *Cantor v. Cochran*, 184 So. 2d 173, 174 (Fla. 1996) ("[independent contractor] status depends not on the statements of the parties but upon all the circumstances of their dealings with each other.")); *see also State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1303 (S.D. Fla. 2018) ("As to the alleged . . . misrepresentations, this is a highly factual inquiry that is generally left for the finder of fact."). "[E]xistence of any agency relationship is a question of fact under general maritime law." *Franza*, 772 F.3d at 1237-38. Therefore, the Court

must still look at all the circumstances, and in doing so, Plaintiff has pled sufficient facts suggesting that the shore excursion was in fact an NCL excursion.

In its reply, NCL presents another argument for the first time, that a representation that an excursion is "safe" cannot form the foundation of a negligent misrepresentation or misleading advertisement claim. Though this argument is not properly before the Court, we still note that the argument is flawed. Current case law holds that an alleged misrepresentation about an excursion being safe can be a recognizable negligent misrepresentation and misleading advertising claim. *See Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1370 (S.D. Fla. 2019) (denying motion to dismiss negligent misrepresentation and misleading advertisement claims based on "safety"); *See Gayou*, 2012 WL 2049431, at *8 (denying motion to dismiss negligent misrepresentation claim regarding "safety" when cruise operator "touted and promoted the zip-lining excursion's safety").

Therefore, we recommend that NCL's motion to dismiss Counts II and III should be **DENIED**.

### C.    *Count IV – Negligent Selection/Retention*

To state a claim for negligent hiring and selection of an independent contractor, a plaintiff must allege that: "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Wolf*, 683 F. App'x at 796; *see also Ferretti v. NCL (Bahamas) Ltd.*, 2018 WL 1449201, at *3 (S.D. Fla. Mar. 22, 2018). "The relevant

16

inquiry is whether [the cruise line] diligently inquired into [the tour operator's] fitness." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1319 (S.D. Fla. 2011).

NCL argues that Count IV fails because Plaintiff has not adequately plead the "knowledge" element.   However, Plaintiff alleges that NCL had knowledge of the following:

a. Prior incidents involving NCL passengers injured on the subject excursion involving the same or substantially similar excursions operated by the Excursion Entities; and/or

b. NCL's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having NCL's representative(s) take the excursion; and/or

c. NCL's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or

d. Thoroughly inquiring into the Excursion Entities' certification(s), reputation, reviews, prior incidents, years in operation, and/or history in working with other cruise lines; and/or

e. Examining the complaints and/or reviews of prior NCL passengers who had participated in the excursion; and/or

f. Periodically requesting and examining safety history reports from the Excursion Entities as well as periodically sending NCL's own staff to visit the excursion site(s) and evaluate the excursion experience.

[D.E. 9].

In addition to these allegations, Plaintiff alleged the existence of the Third-Party Complaints.  NCL argues that none of these reviews reference the excursion in question, NCL, or DNA.   NCL thus concludes that there is no reason it should have

knowledge of these reviews.  As previously discussed, the allegations do state that some of the Third-Party Complaints are regarding the subject shore excursion. Further, NCL's argument ignores all the other allegations.  For instance, the allegations that NCL did examine "reviews of prior NCL passengers who had participated in the excursion" and NCL had knowledge that there were prior incidents involving the same excursion.

NCL also contends these allegations regarding knowledge are insufficient because the allegations here are like the ones dismissed in *Bailey v. Carnival Corporation*, 369 F. Supp. 3d 1302, 1311 (S.D. Fla. 2019).  This argument also misses the mark.  In *Bailey*, "[n]owhere within the complaint" did the plaintiff allege the defendant had knowledge that the excursion entity was incompetent or unfit.  *Id.*  In this case, Plaintiff provides numerous allegations of how NCL had knowledge that DNA was incompetent or unfit and that the excursion was not "easy."

For these reasons, Plaintiff has alleged sufficient facts and NCL's motion to dismiss the negligent retention and selection claim in Count IV should be **DENIED**.

### D.   <u>*Count V – Negligent Failure to Warn*</u>

Plaintiff alleges in Count V that NCL was negligent for failing to warn her of the dangers associated with the shore excursion.  These dangers include the failure to inspect or monitor the nature path used for the excursion, to verify that the excursion was reasonably safe, to adhere to high safety standards, to communicate with customers that the excursion operators carried inferior insurance policies when compared to NCL, to notify customers that the excursion workers were incompetent

and inadequately trained, and to inform Plaintiff that safe footwear should be worn for the excursion.

NCL argues that Count V should be dismissed because (1) Plaintiff failed to plead sufficient facts to show that NCL knew or should have known of the alleged dangers and (2) NCL has no duty to warn of open and obvious dangers.   Because we have already determined that Plaintiff has adequately alleged that NCL had knowledge of the alleged danger at issue and it was plausible that it was not open and obvious to a reasonable person in Plaintiff's circumstances, NCL's motion to dismiss Count V should be **DENIED**.

### E.     *Count VI – Negligence Based on Apparent Agency or Agency by Estoppel*

Plaintiff next claims that Defendants are vicariously liable for each other's alleged negligence in Count VI under a theory of apparent agency or agency by estoppel.   To plead a negligence claim premised upon apparent agency, a plaintiff must allege: (1) the principal made some sort of manifestation causing a third party to believe that the agent had authority to act for the benefit of the principal; (2) that such belief was reasonable; and (3) that the plaintiff reasonably acted on such benefits to his detriment. *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005); *Smith-Russo v. NCL (Bahamas) Ltd.*, 2017 WL 5565613, at *12 (S.D. Fla. July 26, 2017).

Apparent agency is so similar to agency by estoppel that, when interpreting Florida law, the Eleventh Circuit does not even consider the two separately.   *See Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 n.15 (11th Cir. 2003)

("Whetstone also argues that the doctrine of agency by estoppel applies. That doctrine, however, is so similar to apparent authority that there is no significant difference between them, we do not consider agency by estoppel separately") (internal citation and quotation marks omitted). That is, "[u]nder Florida law, agency by estoppel . . . embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change of position by the claimant in reliance on the representation." *United Bonding Ins. Co. v. Banco Suizo–Panameno, S.A.,* 422 F.2d 1142, 1146 (5th Cir. 1970) (citations omitted).

Therefore, having found that the negligence claim against DNA can move forward, NCL may be vicariously liable for DNA's alleged negligence if it was the apparent agent of DNA. Likewise, DNA may be vicariously liable for the negligence claims alleged against NCL. Here, Plaintiff has alleged the following facts that support an apparent agency between the Defendants: NCL made all arrangements for the shore excursion, NCL marketed the shore excursion using its company logo, NCL maintained an excursion desk on its ship, the fee for the shore excursion was charged and collected by NCL, NCL provided the receipt for the shore excursion, and NCL sent Plaintiff an excursion credit voucher to induce Plaintiff to book excursions through NCL. *See Storm v. Carnival Corp.*, 2020 WL 6293346, at *7 (S.D. Fla. Sept. 10, 2020), *report and recommendation adopted*, 2020 WL 6290351 (S.D. Fla. Oct. 27, 2020) (denying motion to dismiss apparent agency claim with similar allegations as here).

In arguing that these allegations fail to establish an apparent agency relationship as a matter of law, Defendants make similar arguments in their motions that we address in tandem. Defendants assert that the NCL passenger ticket that states DNA is an independent contractor requires us to dismiss the agency claim as a matter of law. For the same reasons we rejected this argument by NCL in regard to Counts II and III, this argument is unavailing as this stage of litigation. *See Franza*, 772 F.3d at 1235-36 ("[T]he existence of an agency relationship is a question of fact under the general maritime law."); *Storm*, 2020 WL 6293346, at *7. Additionally, Defendants' argument fails because the cases they reference were almost all decided on a motion for summary judgment and after a complete development of the factual record. *See, e.g., Wolf*, 683 F. App'x at 798 (affirming district court's decision to grant summary judgment in cruise line's favor). That is, while Defendants invite us to consider the content of the underlying ticket contract, we decline to resolve a factual dispute on a motion to dismiss because it should be reserved for summary judgment or trial. *See Ceithaml*, 207 F. Supp. 3d at 1356 ("Celebrity argues that Ceithaml's apparent agency theory, even if successfully pled as a negligence claim, must fail because the shore excursion ticket, shore excursion brochure, and passenger ticket contract all release Celebrity from liability. However, consideration of these releases would be premature at the motion to dismiss stage as the release of liability is more properly considered an affirmative defense.") (citing Fed. R. Civ. P. 8(c)(1)).

Because Plaintiff has adequately alleged facts supporting an apparent agency claim, Defendants' motions to dismiss Count VI should be **DENIED**.[4]

### F.  *Count VII – Joint Venture*

Plaintiff's penultimate claim is that Defendants are vicariously liable for each other's negligence because the entities were engaged in a joint venture.

Although there is technically no cause of action for joint venture, such a claim should be construed as an alternative theory for negligence liability. *See Ash v. Royal Caribbean Cruises Ltd.*, 2014 WL 6682514, at *8 (S.D. Fla. Nov. 25, 2014) ("There is no cause of action for 'Joint Venture,' but, as with Count III, it is clear from review of the substance of the count that Plaintiffs' Count IV simply advances another alternative theory for *negligence* liability").   A claim for joint venture liability requires a party to plead: (1) a "community of interest in the performance of a common purpose;" (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained.  *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1312, 1318-19 (S.D. Fla. 2016) (quoting *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009)).   Importantly, these elements are treated as "only signposts, likely indicia, but not prerequisites" to stating a claim.  *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria,* 935 F.2d 208, 211 (11th Cir. 1991).

---

[4]   It would also be inappropriate to consider the ticket contract on a motion to dismiss because it is not undisputed are "so central to Plaintiff's claim as to compel the Court to stray from the four corners of the complaint at this stage of the litigation." *Aronson*, 30 F. Supp. 3d at 1397.

Defendants contend that the joint venture claim against them should be dismissed because the amended complaint contains mere recitals of the elements of a joint venture with no supporting factual basis. Defendants then reference a tour operating agreement between NCL and the Excursion Entities that states that the relationship between the parties was *not* a joint venture. Because this agreement undermines Plaintiff's allegation that Defendants operated as a joint venture, Defendants conclude that Count VII against them should be dismissed with prejudice.

It is undisputed that this agreement states that Defendants did not agree in writing to operate as a joint venture. Defendants reason that this should be the end of the inquiry. But, a court's review at the motion to dismiss stage is generally limited to the four corners of the complaint with the only exception occurring when: (1) a plaintiff refers to a document in the complaint; (2) the document is central to its claim; (3) the document's contents are not in dispute; and (4) the defendant attached the document to its motion to dismiss. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007) (internal citation omitted).

Here, the agreement does *not* meet this exception because the amended complaint never makes reference to a tour operating agreement. The pleading only states that "NCL and the Excursion Entities entered into *an agreement* where NCL would sell the subject excursion to its passengers and the Excursion Entities would operate the subject excursion." [D.E. 9, ¶ 87] (emphasis added). Whether this "agreement" is the same as the tour operating agreement is unclear and we have no

basis to make that conclusion on a motion to dismiss.  Regardless, an excursion operating agreement is not necessarily central to a plaintiff's negligence-liability-by-way-of-joint-venture theory.  *See Ash*, 2014 WL 6682514, at *8.  A joint venture, like a partnership, can be created by express or implied contract, and two parties could create a joint venture notwithstanding a prior written contract foreclosing such a possibility.  *Id.*; s*ee Williams v. Obstfeld,* 314 F.3d 1270, 1275-76 (11th Cir. 2002) (finding that a joint venture, similar to a partnership, can be created by express or implied contract); *Pinnacle Port Cmty. Ass'n v. Orenstein*, 872 F.2d 1536, 1539 (11th Cir. 1989) (holding that a joint venture can be inferred from the parties' conduct).

Turning to the substance of the allegations, we find the elements of a joint venture claim are met.  Defendants next maintain that these allegations are insufficient because they are too conclusory.  But Defendants never make clear how they are inadequate, and Plaintiff gives supporting facts in support of each element to state a claim for this theory of negligence liability. *See Ash*, 2014 WL 6682514, at *8 (denying motion to dismiss under similar facts); *Gentry v. Carnival Corp.*, 2011 WL 4737062, at *7 (S.D. Fla. Oct. 5, 2011) (same).

Defendants' motions to dismiss Count VII against them should therefore be **DENIED** because every allegation required to state a claim of joint venture is included in the amended complaint.

### G.    *Count IX – Third-Party Beneficiary*

In Plaintiff's final claim, she alleges DNA breached a third-party beneficiary contract that was intended to benefit NCL's passengers, including her.  To plead a

breach of a third-party beneficiary contract, a plaintiff must allege (1) the existence of a contract to which the plaintiff is not a party, (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit the plaintiff, (3) breach of that contract by one of the parties; and (4) damages to the plaintiff that result from the breach. *Lapidus*, 924 F. Supp. 2d at 1360-61. For a third party to have a legally enforceable right under the contract, the benefit to the third party must be the "direct and primary object of the contracting parties." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). The third parties do not need to be specifically named in the contract to qualify as intended beneficiaries, as "long as the contract refers to a well-defined class of readily identifiable persons that it intends to benefit." *Belik*, 864 F. Supp. 2d at 1312 (internal citations omitted). However, the parties' intent to benefit the third party must be specific and must be clearly expressed in the contract in order to endow the third-party beneficiary with a legally enforceable right, and an incidental benefit to a third party is insufficient to sustain a claim. *Bochese*, 405 F.3d at 982.

Plaintiff alleges that the terms of an agreement to operate the shore excursion between Defendants demonstrate their intent to benefit NCL's passengers, including Plaintiff. On the other hand, DNA argues that this is disproven by the terms of such agreement. DNA cites the agreement, which directly addresses the question of third-party beneficiaries: "[o]ther than as expressly set forth herein, this Agreement shall not be deemed to provide third parties with any remedy, claim, or right of action." [D.E. 14, Ex. B]. Plaintiff does not deny this is what the agreement states but

contends intent is more appropriately addressed at the summary judgment stage and the agreement contains other provisions that shows the intent of the agreement regarding third-party beneficiaries is ambiguous.

In *Zapata v. Royal Caribbean Cruises, Ltd*, there was a similar third-party beneficiary clause.  2013 WL 1296298, at *6 (S.D. Fla. Mar. 27, 2013).  The court there dismissed the third-party beneficiary claim, finding that the contract "expressly disclaims any intent to benefit Plaintiff."  *Id.*, *see also Gayou*, 2012 WL 2049431, at *11 (dismissing a claim for third-party beneficiary where the contract's terms expressly disclaimed any intent to benefit third parties); *Moreno v. Carnival Corp.*, 2020 WL 128481, at *3 (S.D. Fla. Jan. 10, 2020) (same).

We agree with the reasoning and analysis in *Zapata* and find that the terms of the agreement here expressly disclaim any intent for the contract to primarily benefit Plaintiff.  Therefore, DNA's motion to dismiss Count VIII should be **GRANTED**.

### *IV.    CONCLUSION*

For the foregoing reasons, we **RECOMMEND** as follows:

1.  DNA's motion to dismiss Count I should be **DENIED**;

2.  NCL's motion to dismiss Counts II, III, and IV should be **DENIED**;

3.  NCL's motion to dismiss Count V should be **DENIED**;

4.  Defendants' motions to dismiss Count VI against them should be **DENIED**;

5.  Defendants' motions to dismiss Count VII against them should be **DENIED**; and

6.   DNA's motion to dismiss Count VIII should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 4th day of December, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge